**In re Baldev PATEL d/b/a Wharton Inn and Jayesh Patel.**

**No. 13–07–003–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 29, 2007.

Roger G. Jain, Thomas H. Smith III, Houston, for relators.

John M. Tenney, Aaron Pool, Houston, Louis J. Sandpote, Joseph D. Zopolsky, Dallas, for real parties in interest.

Before Justices RODRIGUEZ, GARZA, and BENAVIDES.

## OPINION

Opinion by Justice RODRIGUEZ.

Relators, Baldev Patel d/b/a Wharton Inn (the Inn) and Jayesh Patel,[1] filed a petition for writ of mandamus against respondent, the Honorable Daniel Richard Sklar, the presiding judge of the 329th Judicial District Court, Wharton County, Texas. In their petition, relators requested that this Court vacate respondent's order of November 27, 2006, which denied relators' motion to quash notices of intention to take depositions by written questions and subpoenas duces tecum for records regarding relators that were in the possession of relators' accountant, bank, insurance agent, and the Texas Comptroller of Public Accounts. Relators also requested that this Court vacate respondent's order of November 27, 2006, which granted entry upon the Inn, the property at issue in this proceeding. Additionally, relators filed a motion for temporary, emergency relief asking this Court to stay both orders pending the resolution of the issues raised in their petition for writ of mandamus.

On January 11, 2007, we issued an order denying relators' request as to the deposition by written questions and subpoenas duces tecum issued to Insurance Net, one of relators' insurance agents, and the Texas Comptroller. We also denied relief sought regarding the trial court's November 27, 2006 order granting real parties,

---

1. In this opinion, we will refer to Baldev Patel and Jayesh Patel individually as Baldev or Jayesh or, collectively, as relators.

GAB Robins North America, Inc., and Ken Kauffman, entry upon the Inn. We did, however, grant emergency relief and stayed the portion of the trial court's November 27, 2006 order that denied relators' motion to quash the depositions on written questions with subpoenas duces tecum issued to Mahesh Desai, relators' certified public accountant (CPA), and to Prosperity Bank, relators' bank. Real party in interest, Nautilus Insurance Company (Nautilus), filed its response on January 31, 2007.

Addressing the trial court's denial of relators' motion to quash the depositions on written questions with subpoenas duces tecum issued to Desai and Prosperity Bank,[2] we now conclude that relators are entitled to mandamus relief from that portion of the order compelling production of any and all documents related to Jayesh Patel and from that portion of the order compelling production of the tax returns and supporting documentation of Baldev Patel. Accordingly, we deny the petition, in part, and conditionally grant the petition, in part.

## I. Background

This proceeding arises out of a suit by the Patels filed against Nautilus, an insurance company that insured the Inn during the relevant time period; Gab Robins North America, Inc., the adjustor who evaluated the damage at issue; and Ken Kauffman, GAB Robins's employee who inspected the Inn. In the suit, the Patels appear to be seeking recovery for lost income, lost business opportunities, and all interior damages to the Inn allegedly caused by a March 13, 2003 hail storm.[3]

Nautilus issued a third-party deposition on written questions with a subpoena duces tecum attached to Prosperity Bank requesting the following:

> Any and all documents, including but not limited to, any and all bank statements, checks, deposit slips, withdrawal slips, loans, loan applications, property appraisals or any other documents relating to Baldev Patel and/or Baldev Patel d/b/a The Wharton Inn and/or Jayesh Patel, including, but not limited to, Accounts 20567123, 20903849 and any other open or closed accounts.

A similar notice to Desai asked for the following documents:

> Copies of any and all documents relating in any way to Baldev Patel, Jayesh Patel and/or Baldev Patel d/b/a Wharton Inn, including, but not limited to U.S. Income Tax Returns with all accompany [sic] schedules and forms, income statements, balance sheets, financial statements, invoices and other documents supporting any deductions, expenses, or income for 1997 to the present.

The Patels timely objected and filed a motion to quash the depositions on written question requests asserting that the requests were (1) overbroad, (2) not relevant, (3) not likely to lead to the discovery of admissible evidence, (4) not material, and (5) protected under the accountant-client privilege found in section 901.457 of the occupations code. *See* TEX. OCC.CODE ANN. § 901.457 (Vernon 2004). The trial court denied the motion, and the Patels now seek mandamus review.

---

**2.** Because we denied the petition as to documents requested from Insurance Net and from the Texas Comptroller of Public Accounts in our January 11, 2007 order, we only address the written depositions and subpoenas issued to Mahesh Desai and Prosperity Bank in this opinion.

**3.** We note that a copy of the petition does not appear in the record.

## II. The Law

■ Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty, and there is no adequate remedy at law, such as an appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion. *See, e.g., Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995) (orig. proceeding). If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist. *Texaco*, 898 S.W.2d at 815; *Walker*, 827 S.W.2d at 843.

*In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004) (orig. proceeding) (per curiam); *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995) (orig. proceeding) (per curiam) (providing that the scope of discovery is largely within the discretion of the trial court).

■ Discovery is generally permitted of any unprivileged information relevant to the subject of a lawsuit, whether it relates to a claim or defense of the parties. TEX.R. CIV. P. 192.3(a); *see In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam) (providing that although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution and may not be used as a fishing expedition). As long as the information sought appears reasonably calculated to lead to the discovery of admissible evidence, it is not a ground for objection that the information sought will be inadmissible at trial. TEX.R. CIV. P. 192.3(a). "An order compelling discovery that is well outside the proper bounds is reviewable by mandamus." *In re Am. Optical Corp.*, 988 S.W.2d at 713.

## III. Analysis

### A. Overbroad Challenge

■ Relators first argue that Nautilus's requests for "any and all records" are overbroad. They complain that Nautilus could have more narrowly tailored its requests to avoid including tenuous information by itemizing the documents sought. *See In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex.2003) (orig. proceeding) (per curiam) (citing *In re Am. Optical*, 988 S.W.2d at 713). From Prosperity Bank, Nautilus sought "any and all" bank statements, checks, deposit slips, withdrawal slips, loans, loan applications, property appraisals or any other documents relating to Baldev Patel and/or Baldev Patel d/b/a The Wharton Inn and/or Jayesh Patel. From Desai, it requested "any and all" documents including tax returns with all supporting documents for 1997 to the present, again relating to Baldev Patel and/or Baldev Patel d/b/a The Wharton Inn and/or Jayesh Patel.

■ The mere existence of the language "any and all" does not violate the specificity requirements of discovery as long as the request is further restricted to a particular type or class of documents. *See Chamberlain v. Cherry*, 818 S.W.2d 201, 204 (Tex. App.-Amarillo 1991, orig. proceeding). Both subpoenas in question contain a description of a particular type or class of documents following the language "any and all." The requests show a reasonable expectation of obtaining information that will aid the dispute's resolution. *See In re Am. Optical Corp.*, 988 S.W.2d at 713. The subpoenas duces tecum are directed to entities which are in possession of documents relative to the Patels' financial condition. Nautilus also concedes that it is not requesting documents dated prior to 1997, the date Baldev began doing business as the Wharton Inn. Thus, the sub-

poenas do not require the production of documents from an unreasonably long period of time. Accordingly, we conclude that Nautilus's requests are not overly broad.

## B. Relevancy Challenges

Relators further argue that even if Nautilus tailored its requests to identify specific documents sought, it failed to show how any documents in the possession of Prosperity Bank or Desai would be relevant to the issues in this cause. In response, Nautilus asserts that the documents sought from Prosperity Bank and Desai are relevant to relators' claims for lost rental income and lost business opportunity because the claims place their financial condition in issue. It contends that these records would allow it to test the accuracy of relators' alleged loss of rental income during a particular period of time and should also identify trends for income earned at the Inn during certain times of year in the pre- and post-storm periods. Nautilus also urges that it sought documents from Prosperity Bank and from Desai that could substantiate repairs made to the Inn following the hail storm and reveal the identity of (1) pre-storm insurance carriers that were paid premiums out of the bank accounts, (2) insurers that insured and inspected the property, and (3) contractors or other service providers paid out of these accounts that may be familiar with the property's pre-storm condition.

### 1. Relevancy of Documents Related to Jayesh Patel

■ Relators more specifically assert that the documents requested from the bank and the accountant regarding Jayesh Patel are not relevant. Based on the record before us, we agree.

■ The general rule in financial records production cases is that the burden on the discovery of financial records lies with the party seeking to prevent production. *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985) (orig. proceeding); *see Kern v. Gleason*, 840 S.W.2d 730, 735–37 (Tex. App.-Amarillo 1992, orig. proceeding) (applying general rule to production of financial records). In its response to the motion for protective order and motion to reconsider and/or modify, Nautilus asserted that "Jayesh Patel has also made a claim for money damages as a result of the alleged lost revenue and lost business opportunity." Nautilus cites the following portion of Jayesh's deposition testimony to support this assertion:

Q. Are you making a claim for lost business opportunity in this lawsuit against Mr. Kauffman, GAB and Nautilus Insurance Company?

A. Loss of business at the Wharton Inn?

Q. Well, are you making a claim for a lost opportunity to have this hotel? Is that part of your claims in this lawsuit?

A. I feel like it was a personal loss to me.

Q. Are you making a claim to receive money for that in this lawsuit?

A. Yes.

Additionally, in its response to relators' motion for protective order and motion to reconsider and/or modify, to support the relevancy of Jayesh's financial records, Nautilus relies upon Jayesh's response to questions regarding a lost business opportunity. At his deposition, Jayesh explained that he was planning to run a new property himself, while his mother and father ran the Inn. The $45,000 or $50,000 that had been borrowed for the down payment on another motel was allegedly used to make repairs at the Inn. This money, however,

according to Jayesh's testimony, had been borrowed by Baldev, not Jayesh.

To challenge the relevancy of Jayesh's financial records, relators attached Jayesh's affidavit to their motion for protective order and motion to reconsider and/or modify the order denying their motion to quash. The affidavit set out, in relevant part, the following:

I have personal knowledge because I live on the premises of the Wharton Inn with my father [Baldev Patel], and I have helped him run his business since he purchased it in 1997.

My father is the owner and manager of the Wharton Inn. My father does not speak English well, so he requested that I attend the depositions of Defendants and their representatives. Defendants' attorneys would not allow me to sit in on the depositions because I was not a party to this lawsuit. Because I am named as a beneficiary on the insurance policy, I was added as a Plaintiff to the lawsuit so that I could attend the depositions of Defendants and their representatives in place of my father.

I have no ownership interest in the Wharton Inn, so my individual personal tax returns, banking records, and accounting records are not relevant to any matters in this lawsuit.

Based on the above, we conclude that relators satisfied their burden regarding their challenge to the discovery of Jayesh's financial records from Prosperity Bank and Desai. *See Peeples,* 701 S.W.2d at 637. Jayesh had no ownership interest in the Inn, and, other than plans to run a new property himself, Jayesh had no financial stake in the new property for which his father had borrowed money for a down payment. The trial court's ruling regarding the production of documents related to Jayesh, thus, required production beyond what our procedural rules permit. *See*

TEX.R. CIV. P. 192.3(a); *In re Dana Corp.,* 138 S.W.3d at 301. The documents do not appear to be relevant to the subject of a lawsuit and may not be used as a fishing expedition. *See In re Am. Optical Corp.,* 988 S.W.2d at 713. Thus, the trial court abused its discretion in ordering the production of Jayesh's documents from Prosperity Bank and Desai. *See* TEX.R. CIV. P. 192.3(a).

### 2. Relevancy of Documents Related to Baldev Patel

■ At his deposition, Baldev testified that his bank account would reflect daily hotel income deposited and that Desai would have possession not only of his tax returns, but also of any financial statements setting forth his financial condition and monthly income at various times. At his deposition, Baldev also identified individuals who performed repair work on the Inn. He explained that they were paid in cash, and, therefore, the financial records would not help Nautilus identify these individuals. However, while Baldev provided Nautilus receipts for supplies and equipment used in the clean up and repair of the Inn and stated that these items were also paid for in cash, he also testified at his deposition that he would withdraw money from his bank account in order to pay cash for the supplies or services. Therefore, while identification might not be forthcoming from the requested records, certainly the timing of the cash withdrawals is relevant to substantiate when repairs were made, the cost of the repairs, and even, perhaps, the frequency and payment of insurance payments which may lead to the identification of other insurance carriers who may have conducted inspections and filed reports on the interior of the Inn's rooms. Therefore, we conclude that Nautilus has sought information from Prosperity Bank and Desai regarding Baldev that

is relevant to claims made and to information that is reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 192.3(a); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (providing that appellate courts are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed).

### C. Challenge to Production of Tax Returns and Supporting Documentation

Relators specifically challenge the trial court's order compelling the production of federal income tax returns with all supporting documentation for 1997 to the present. Relators contend that Nautilus cannot obtain the income tax returns because it has not shown relevancy and materiality, and, even had relevancy and materiality been established, the returns were not submitted for an in camera inspection to separate the irrelevant and immaterial parts before production.

The Texas Supreme Court has long cautioned us that:

Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between the litigants outweighs protection of their privacy. But sacrifices of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

*Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex.1962) (orig. proceeding); *see Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex.1995) (orig. proceeding) (per curiam) (concluding that income tax returns are discoverable to the extent that they are relevant and ma-

terial to issues presented in the lawsuit); *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex.1992) (orig. proceeding) (per curiam) (concluding that issuance of mandamus was "guided by our reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns").

 Once an objection is asserted, as in this case, unlike the production of other financial records, *see Peeples*, 701 S.W.2d at 637 (setting out that burden on the discovery of financial records lies with the party seeking to prevent production), the party seeking discovery of the tax returns has the burden of showing relevance *and* materiality. *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex.App.-San Antonio 1994, orig. proceeding) (citing *Maresca*, 362 S.W.2d at 300) (emphasis added).

 To meet its burden, in its response in opposition to relators' motion to quash, Nautilus offered the following argument:

Nautilus has previously propounded written discovery on Plaintiffs seeking records and other documents regarding income earned at Plaintiffs' hotel during the preceding and after the storm, including complete income tax returns.... Plaintiffs have not provided this information and in deposition claimed to be unable to recall this information.

In its response to relators' petition in this original proceeding, Nautilus asserts that the income tax returns will "provide information that will lead to the discovery of admissible evidence regarding Relators' overall financial condition" and that the returns "are the best source of information as to *all* sources of Relators' disposable income. The returns may also contain information about the condition of and repairs to the property in question prior to

the storm." *See* NAUTILUS'S RESPONSE TO [THE PATELS'] PETITION FOR WRIT OF MANDA-MUS, p. 15 (emphasis in original). Nautilus continues, "since the Relators' income tax returns are the best source of information regarding all income from all sources and may contain information about the condition of the property, there is no reasonable need for an *in camera* inspection." *See id.* "All portions of income tax returns are relevant to the subject of Relators' overall financial condition, including deductions to income, which must be examined to verify the extent of Relators' disposable income." *See id.* at pp. 15–16.

█ Nautilus has provided no authority to support its contentions, specifically as to the materiality of the tax records and the supporting documentation.[4] Federal income tax returns are not material if the same information can be obtained from another source. *See El Centro del Barrio*, 894 S.W.2d at 780. This limitation requires the requesting party to show that the relevant information sought through the returns cannot be obtained from another source. *See id.* (citing *Kern*, 840 S.W.2d at 738). While acknowledging Nautilus's frustration with the financial information relators have produced in response to written discovery and at deposition, there is no indication the financial records to be produced by Prosperity Bank and by Desai, as well as those to be produced or already produced by Insurance Net and the Texas Comptroller's Office, will not provide the information sought. *See Sears*, 824 S.W.2d at 559 (a unanimous supreme court finding the trial court abused it discretion by requiring disclosure of tax returns when the same information had been obtained from another source); *Maresca*, 362 S.W.2d at 301

(same); *El Centro del Barrio*, 894 S.W.2d at 779–80 (same); *Kern*, 840 S.W.2d at 738 (providing that claimants were required to attempt to discover relevant evidence from other records before seeking production of income tax returns). Discovery of tax returns, in addition to other documents requested, may result in unnecessary duplication. *See Sears*, 824 S.W.2d at 559.

Therefore, on this record, having determined Jayesh's tax returns are not relevant, we now conclude that Nautilus has not shown materiality and is not entitled to production of the Baldev's income tax returns and supporting documentation. The trial court abused its discretion in finding that these documents are material and in ordering their production. We are mindful, however, that our ruling is based solely on the record before us and that we express no opinion regarding whether, after additional discovery, the tax returns and supporting documentation could be shown to be material. *See Kern*, 840 S.W.2d at 738 (noting that if alternate source of information proves to be incomplete, renewed request for income tax returns could be made). Moreover, steps such as *in camera* inspection or redaction may be advisable or necessary to limit disclosure solely to information that is determined to be discoverable. *See, e.g., Maresca*, 362 S.W.2d at 301.

### D. Accountant–Client Privilege as to Baldev's Records

█ Finally, relators complain about the production of documents requested from Desai, their CPA. They contend that Nautilus has not sought, nor obtained, an order from the trial court directing Desai to disclose any specific information concerning relators or the Inn;

---

**4.** We assume, without deciding, that Baldev's tax returns and supporting documentation

contain relevant information.

thus, production is privileged under section 901.457 of the occupations code.[5] Nautilus does not counter that an accountant-client evidentiary privilege does not exist in Texas.[6] It argues only that the documents requested from Desai must be disclosed because there was a court order that satisfied the requirements of section 901.457. Therefore, assuming without determining that an accountant-client evidentiary privilege exists in Texas, we will address the only issue before this Court, that being whether there is a court order requiring the production of the requested documents.

Section 901.457 titled "Accountant–Client Privilege," provides, in relevant part, the following:

(a) A license holder ... may not voluntarily disclose information communicated to the license holder ... by a client in connection with services provided to the client by the license holder ..., except with the permission of the client....

(b) This section does not prohibit a license holder from disclosing information that is required to be disclosed:

\* \* \* \* \* \*

(2) ... under a court order if the ... order:

(A) is addressed to the license holder;

(B) mentions the client by name; and

(c) requests specific information concerning the client....

TEX. OCC.CODE ANN. § 901.457.

In this case, the notice of intent to take deposition by written questions and the direct questions to be propounded to the witness were to be taken of the custodian of records for Mahesh Desai, CPA, at 7100

**5.** Section 901.457 is found under title 5, "Regulation of Financial and Legal Services," subtitle A, "Financial Services," and chapter 901, "Accountants." TEX. OCC.CODE ANN. § 901.457 (Vernon 2004).

**6.** Like Texas, several states have established a statutory accountant-client privilege protecting confidential communications between accountant and client. *See e.g.,* 225 ILL. COMP. STAT. 450/27 (2001); MD.CODE ANN., CTS. & JUD. PROC. § 9–110 (2001); TEX. OCC.CODE ANN. § 901.457. However, "[s]tatutory provisions providing for duties of confidentiality do not automatically imply the creation of evidentiary privileges binding on courts." *Pearson v. Miller,* 211 F.3d 57, 68 (3d Cir.2000); *see Sonnino v. University of Kan. Hosp. Auth.,* 220 F.R.D. 633, 642 (D.Kan.2004) (noting that "a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential"). Material that is required to be kept "confidential" may not be protected from disclosure in judicial proceedings. *Pearson,* 211 F.3d at 68; *see Sonnino,* 220 F.R.D. at 642. Other than citing section 901.457 of the occupations code, neither party has provided authority for the proposition that an accountant-

client evidentiary privilege exists in Texas, and we find none. *See* TEX. OCC.CODE ANN. § 901.457; *see also Canyon Partners, L.P., v. Developers Diversified Realty Corp.,* No. 3–04–CV–1335–L, 2005 U.S. Dist. LEXIS 26782, at \*3 (N.D. Tex.-Dallas Div. Nov. 4, 2005) (mem. op.) (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 134 (E.D.Tex.2003); *Sims v. Kaneb Servs., Inc.,* No. B14–87–00608–CV, 1988 WL 62294, at \*5, 1988 Tex.App. LEXIS 2243, at \*14 (Tex. App.-Houston [14th Dist.] June 16, 1988, no writ)) ("The court initially observes that there is no accountant-client privilege under federal or Texas law."); *cf. United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (quoting *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) ("[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.")). Therefore, because the law is not clear on this issue, to the extent the trial court's denial of the motion to quash in this case was based on no privilege, we cannot conclude it abused its discretion.

Regency Square Blvd., Houston, TX 77036. The records requested were those of Baldev Patel d/b/a Wharton Inn and/or the Wharton Inn. The documents specifically requested the following:

Copies of any and all documen[t]s relating in any way to Baldev Patel, Jayesh Patel and/or Baldev Patel d/b/a Wharton inn, including, but not limited to U.S. Income Tax Returns with all accompany [sic] schedules and forms, income statements, balance sheets, financial statements, invoices and other documents supporting any deduction, expenses, or income for 1997 to the present.

Relators filed a motion to quash all notices, including the notice for documents in the possession of Desai. On November 27, 2006, the trial court signed an order denying this motion to quash. We conclude that this order, in effect, orders the production of the documents held by Desai as identified in the notice from Nautilus, thus, satisfying the requirements outlined above in section 901.457. On this basis, the trial court did not abuse its discretion in allowing discovery of documents in Desai's possession, except for Baldev's tax returns and supporting documentation and all documents that relate to Jayesh Patel, as discussed above.

## IV. Conclusion

In this case, the trial court compelled discovery of documents outside the proper bounds. *See In re Am. Optical Corp.*, 988 S.W.2d at 713. Thus, mandamus is proper, as there is no adequate remedy at law if such documents are produced. *See Walker*, 827 S.W.2d at 839.

Having concluded respondent abused its discretion in ordering production of Jayesh's documents and Baldev's tax returns and supporting documentation, we conditionally grant the writ of mandamus on the trial court's denial of relators' motion to quash notices of intention to take depositions by written questions and subpoenas duces tecum for documents from Mahesh Desai, relators' CPA, and from Prosperity Bank, relators' bank, relating to Jayesh Patel and relating to Baldev Patel's federal tax returns and supporting documentation. We will issue the writ of mandamus only if the trial court fails to vacate this portion of its November 27, 2006 order. The remainder of relators' petition for writ of mandamus regarding Nautilus's document requests to Desai and to Prosperity Bank is hereby denied.

Furthermore, we lift the stay of proceedings in respondent's court that was imposed by this Court's order of January 11, 2007.