Opinion issued April 22, 2008
















 


In The

Court of Appeals

For The

First District of Texas


 ____________________



NO. 01-08-00120-CV


 ____________________



IN RE BREWER LEASING, INC. AND TEXAS STRETCH, INC., Relators






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N


 This petition for writ of mandamus concerns discovery requests to produce
financial records and tax returns. Relators, Brewer Leasing, Inc. (Brewer) and Texas
Stretch, Inc., challenge the trial court's order granting the motion to compel
production of documents filed by real party in interest, Marcus Bruce Patterson. (1) We
conclude that the trial court did not abuse its discretion by ordering the production
of the financial records to show the net worth of the corporations. However, the court
erred by ordering the production of the tax returns because Patterson did not show
that the tax returns were necessary to show net worth in light of the other documents
ordered produced. We deny the petition for writ of mandamus for the financial
records, and grant it for the income tax returns. Background

 In June 2006, an eighteen-wheeler truck owned by Brewer collided with many
vehicles on a freeway, resulting in the death of Patterson's wife. The driver of the
truck, who was employed by Texas Stretch, tested positive for cocaine. Patterson
filed suit against Brewer and Texas Stretch, asserting a claim for gross negligence and
seeking punitive damages, as well as other claims.

 In his fourth request for production, Patterson requested that Brewer and Texas
Stretch each produce (1) tax returns for 2002 through 2006; (2) financial statements
for 2002 through 2006; (3) all 2007 monthly financial statements; (4) bank statements
from January 1, 2005 through May 30, 2007; and (5) any document reflecting any
transfer of assets from each of the corporations to any other person or entity from
June 1, 2006 through the present. 

 The corporations each asserted objections to the requests for production. 
Brewer objected by asserting that the request was "vague, overly broad, unduly
burdensome and harassing and to the extent that it seeks irrelevant information and
information not reasonably calculated to lead to the discovery of admissible and/or
relevant evidence." Brewer also objected "on the grounds that it requests extraneous
documents and/or documents not necessary to determine net worth regarding the issue
of punitive or exemplary damages." In its objections, Texas Stretch stated that the
requests were too remote, not relevant nor material to any issue in the litigation, and
that tax returns are generally not discoverable in Texas. 

 Without waiving its objections and pursuant to a confidentiality agreement with
Patterson, each of the corporations produced a balance sheet in response to the
requests for production. The balance sheets were each preceded by an accountant's
letter describing how the figures were calculated. The accountant who prepared the
balance sheet for Brewer said that it was "prepared on the cash basis of accounting
which is a comprehensive basis of accounting other than generally accepted
accounting principles." The accountant who prepared the balance sheet for Texas
Stretch stated that it was prepared "in accordance with Statements on Standards for
Accounting and Review Services issued by the American Institute of Certified Public
Accountants." In each letter, the accountant stated that he did "not express an
opinion or any other form of assurance" on the balance sheet because the information
came from the corporation's financial statements, which had not been audited or
reviewed. Further, the accountant's statement for Texas Stretch includes the
disclaimer, "the accompanying financial statements are not intended to present
financial position and results of operations in conformity with accounting principles
generally accepted in the United States of America." 

 In response to the motion to compel production of documents filed by
Patterson, the trial court, on August 27, 2007, granted the motion to compel
production. Brewer and Texas Stretch each filed a motion for reconsideration, but
the motions were denied in March 2008. The corporations seek mandamus relief to
compel the trial court to (1) vacate the order granting the motion to compel
production and (2) deny Patterson's motion to compel.

Applicable Law for Mandamus Relief in Discovery Requests Mandamus relief is available only to correct a "clear abuse of discretion" when
there is no adequate remedy by appeal. Walker v. Packer, 827 S.W. 2d 833, 839
(Tex. 1992) (orig. proceeding). Clear abuse of discretion occurs when a trial court
"reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law." Id. at 839 (citing Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). The reviewing court may not
substitute its judgment for that of the trial court when reviewing factual issues. Id.
at 839-40. Even if the reviewing court would have decided the issue differently, it
cannot disturb the trial court's decision unless the decision is shown to be arbitrary
and unreasonable. Id. at 840.

 When the trial court orders discovery exceeding the scope permitted by the
rules of procedure, it abuses its discretion. In re CSX Corp., 124 S.W.3d 149, 152
(Tex. 2003) (orig. proceeding). Mandamus review is proper for discovery that is
"well outside the proper bounds." In re Am. Optical Corp., 988 S.W.2d 711, 713
(Tex. 1998) (orig. proceeding). The scope of discovery is generally within the trial
court's discretion. Dillard Dept. Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex.
1995). Discovery requests, however, must be reasonably tailored to include only
matters relevant to the case. Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex.
1995). 

 The ambit of discovery is broad and permits parties to seek discovery
"regarding any matter that is not privileged and is relevant to the subject matter of the
pending action . . . ." Tex. R. Civ. P. 192.3(a). Information is relevant if it tends to
make the existence of a fact that is of consequence to the determination of the action
more or less probable than it would be without the information. Tex. R. Evid. 401. 

 There is no dispute that evidence of net worth is relevant to this lawsuit and
discoverable because Patterson seeks punitive damages, which are recoverable for
gross negligence. See Tex. Civ. Prac. & Rem. Code § 41.003(a); Lunsford v.
Morris, 746 S.W.2d 471, 473 (Tex. 1988). The question before us is limited to
whether Patterson is entitled to discover financial records and income tax returns to
show the net worth of Brewer and Texas Stretch, when the corporations have already
provided balance sheets that purport to show their net worth.Financial Records 

 Brewer and Texas Stretch contend that they should not be required to produce
financial statements, bank statements, and documents referring to transfer of assets
because they have already produced balance sheets that show the net worth of the
corporations. Patterson responds that the balance sheets do not adequately portray
the net worth of the corporations and that the financial documents therefore do not
duplicate the information provided by the balance sheets.

A. Burden is on Party Seeking to Prevent Production 

 "The general rule in financial records production cases is that the burden on the
discovery of financial records lies with the party seeking to prevent production." In
re Patel, 218 S.W.3d 911, 916 (Tex. App.--Corpus Christi 2007, orig. proceeding). 
A trial court does not abuse its discretion by ordering the production of financial
documents that are relevant and material to prove net worth. See Lunsford, 746
S.W.2d at 473; In re Garth, 214 S.W.3d 190, 194 (Tex. App.--Beaumont 2007, orig.
proceeding); Delgado v. Kitzman, 793 S.W.2d 332, 333 (Tex. App.--Houston [1st
Dist.] 1990, orig. proceeding); Miller v. O'Neill, 775 S.W.2d 56, 59 (Tex.
App.--Houston [1st Dist.] 1989, orig. proceeding). However, a trial court does
abuse its discretion by ordering the production of financial records "that would not
necessarily evidence" net worth. Garth, 214 S.W.3d at 194.

B. Balance Sheets Already Provided are not Duplicative 

 To support their contention that production of their balance sheets makes
discovery of other financial documents unnecessary and duplicative, Brewer and
Texas Stretch point to Garth, which states, 

 The trial court also ordered the individuals to produce other categories
of documents not necessarily reflective of their net worth. These
documents included, but were not limited to, income statements, bank
statements, insurance applications, contracts of assignment, accounts
receivable, data, inventory lists and judgments. We hold that such
documents are subject to the same analysis as the request for income tax
returns. Because these documents would not necessarily show a
person's net worth, they are not presumed relevant. Kaiser made no
record to demonstrate their relevance here, particularly in light of the
trial court's order requiring the production of certain financial
statements. 


Id.; see also Sears, Roebuck & Co. v. Ramirez, 824 S.W.2d 558, 559 (Tex. 1992)
(holding Sears's tax return not discoverable, stating, "There is no justification for
requiring Sears to produce the same information in different form."). The Garth court
ordered the production of the balance sheets, but it did not describe what type of
certification would have to accompany the balance sheets for the balance sheets to be
adequate evidence of net worth. Garth, 214 S.W.3d at 194. However, in Ramirez,
the Texas Supreme Court described the type of discovery that would be adequate to
obviate the need to discover tax returns. Ramirez, 824 S.W.2d at 559. Sears
disclosed its net worth "by providing its audited and certified annual reports" and by
including an affidavit by the Manager of Federal Income Tax Returns for Sears that
stated that the annual reports accurately reflected Sears's net worth. Id. Brewer and
Texas Stretch contend that their situation is like that in Garth and Ramirez because
the balance sheets that they have produced makes the discovery of other financial
records unnecessarily duplicative. See Ramirez, 824 S.W.2d at 559; Garth, 214
S.W.3d at 194. 

 We cannot agree that the balance sheets provided by Brewer and Texas Stretch
are the equivalent of Sears's annual report found adequate to constitute the sole
evidence of net worth in Ramirez. Ramirez, 824 S.W.2d at 559. Unlike the Sears
disclosure of net worth, here the balance sheets are not audited, not certified, and do
not include any affidavit or other statement to represent that they accurately reflect
the net worth of the corporations. See id. We also note that Garth is not instructive
on this matter because it is silent concerning the type of certification that must
accompany the balance sheets. See Garth, 214 S.W.3d at 194. More specifically, the
Garth court does not say whether the balance sheets must have the type of
certification offered by Sears or whether the type of certification offered here would
be sufficient. See id.

 The trial court implicitly determined that the balance sheets were inadequate
evidence of the net worth of the corporations by ordering that the other financial
records be produced. Nothing in the record before us shows that the trial court
abused its discretion by making that assessment. As the opponents of the discovery
with the burden to show that they should not have to produce the records, Brewer and
Texas Stretch have not shown that production of the financial records would
duplicate information already provided. See Patel, 218 S.W.3d at 916 (stating that
opponent of discovery has burden to show production unwarranted). We hold that
the trial court did not abuse its discretion by ordering production of the financial
records, including financial statements, bank statements, and documents referring to
transfer of assets.


Income Tax Returns

 Brewer and Texas Stretch contend that the tax returns requested by Patterson
are irrelevant, immaterial, duplicative, and an abuse of the discovery process. 
Patterson responds that the tax returns are relevant to establishing the net worth of the
corporations, and that the tax returns will not duplicate information already provided
because the balance sheets provided by the corporations do not adequately portray net
worth. 

A. Burden is on Party Seeking to Obtain the Tax Return 

 After a party objects to the production of discovery, the party seeking to obtain
the tax returns has the burden to show that the tax returns are relevant and material
to the issues in the case. El Centro del Barrio, Inc. v. Barlow, 894 S.W.2d 775, 779
(Tex. App.--San Antonio 1994, no writ). The burden is thus unlike general
discovery requests, which place the burden on the party resisting the discovery. See
Patel, 218 S.W.3d at 916. Here, Patterson has the burden to show that the tax returns
of the corporations are discoverable. 

B. Discovery of Tax Returns Must be Necessary and Not Duplicative

 The Supreme Court of Texas has repeatedly expressed its "reluctance to allow
uncontrolled and unnecessary discovery of federal income tax returns." Hall v.
Lawlis, 907 S.W.2d 493, 49495 (Tex. 1995) (citing Ramirez, 824 S.W.2d at 559). 
The reason tax returns are treated differently from other discovery requests of
financial matters is because federal income tax returns are considered private and the
protection of that privacy is determined to be of constitutional importance. Maresca
v. Marks, 362 S.W.2d 299, 301 (Tex. 1962) (holding that trial court abused discretion
by ordering entire income tax returns for individuals and corporations "without
separation of the relevant and material parts from the irrelevant and immaterial
parts"). The sacrifice of privacy should be "kept to the minimum, and this requires
scrupulous limitation of discovery to information furthering justice between the
parties which, in turn, can only be information of relevancy and materiality to the
matters in controversy." Id. Because "privacy once broken . . . cannot be retrieved,"
mandamus relief is proper when a trial court orders the production of tax returns that
are immaterial and irrelevant to the cause in which discovery was sought. Id. 

 Tax returns may be discovered only when the "pursuit of justice between
litigants outweighs protection of their privacy." Id. "Income tax returns are
discoverable to the extent they are relevant and material to the issues presented in the
lawsuit." Hall, 907 S.W.2d at 494. But tax returns may not be discovered when the
corporation has provided audited and certified annual reports to show the net worth
of the corporation because the tax returns are unnecessarily duplicative of the
information already provided. Ramirez, 824 S.W.2d at 559. Further, if there are
other adequate methods to ascertain net worth, the trial court should not allow
discovery of tax returns. Garth, 214 S.W.3d at 194 (trial court abuses discretion by
requiring production of tax returns when trial court's order also requires production
of financial statements regarding net worth of party because tax returns are typically
of little value in showing net worth since they show only assets); Chamberlain v.
Cherry, 818 S.W.2d 201, 207 (Tex. App.--Amarillo 1991, no writ) (holding that trial
court did not abuse discretion in refusing to allow discovery of income tax returns
because party seeking to obtain tax returns did not attempt to obtain other evidence
of net worth, such as financial statements, and made no showing that tax returns were
relevant to determination of party's financial position); see also Wal-Mart Stores, Inc.
v. Alexander, 868 S.W.2d 322, 331 (Tex. 1993) (Gonzalez, J. concurring) ("[T]rial
courts should not allow discovery of private financial records, such as tax returns,
when there are other adequate methods to ascertain net worth, such as audited
financial reports or W-2 statements."). For Patterson to prevail in his request to
obtain the tax returns, he has the burden to show that the corporate tax returns he
seeks to obtain are relevant to show the net worth of the corporations, that the tax
returns would not duplicate the information already provided in the balance sheets
tendered by the corporations, or duplicate the other financial records pertaining to net
worth that were ordered produced by the trial court. See Alexander, 868 S.W.2d at
331; Ramirez, 824 S.W.2d at 559; Chamberlain, 818 S.W.2d at 207. (2)

 1. Relevancy of Corporate Tax Returns to Show Net Worth

 Patterson maintains that we should apply a different standard to our evaluation
of corporate tax returns because, according to Patterson, corporate returns include
probative information about net worth that is not found in individual tax returns, such
as a balance sheet and depreciation schedules that list assets. Patterson also says that 
we should apply a different rule to corporations because individuals have a greater
interest in the privacy of tax returns than corporations. Patterson, however, offers no
authority to support his statements. More importantly, the Texas Supreme Court has
never applied a different standard to corporations in its assessment of the probative
value of tax returns and the privacy concerns in the release of tax returns. See
Ramirez, 824 S.W.2d at 559 (expressing its "reluctance to allow uncontrolled and
unnecessary discovery of federal income tax returns" when disallowing
corporations's tax return that was duplicative of certified annual report of net worth); 
Maresca, 362 S.W.2d at 301 (disallowing discovery of income tax returns for
individuals and corporations by applying same standard). Binding precedent from the
Texas Supreme Court requires that we hold that corporations have a privacy interest
in their tax returns and that the tax returns are not discoverable if the returns serve
only to duplicate other reliable evidence that establishes the net worth of the
corporation. See Ramirez, 824 S.W.2d at 559; Maresca, 362 S.W.2d at 301. 

 2. Tax Returns Are Duplicative 

 Having already determined that we agree with Patterson that the uncertified
balance sheets are not duplicative of the financial records that he must produce, for
those same reasons we conclude that the uncertified balance sheets are not duplicative
of the tax returns. However, we conclude that Patterson has failed to show that the
tax returns would not be unnecessarily duplicative of the other financial records
ordered produced by the trial court, namely the financial statements for a period of
five years, the 2007 monthly financial statements, the bank statements for a period of
time of over two years, and all documents reflecting any transfer of assets from each
of the corporations to any other person or entity from June 1, 2006 through the
present. Requiring disclosure of federal income tax returns is a clear abuse of
discretion because Patterson did not meet his burden to show that the tax returns were
necessary to show net worth in light of the other documents ordered produced to
show net worth. See Ramirez, 824 S.W.2d at 559. We hold that the trial court abused
its discretion by ordering Brewer to produce the tax records. Conclusion

 By granting the motion to compel production on August 27, 2007, the trial
court did not abuse its discretion for financial record production but abused its
discretion for income tax return production. Consequently, we deny the petition for
writ of mandamus for financial record production and grant the petition for writ of
mandamus for income tax return production. We also lift our temporary stay on
discovery proceedings. We are confident that the trial court will act promptly in
accord with this opinion, and our writ will issue only if it does not. (3) 



 Elsa Alcala

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.
1. [1] The underlying case is Marcus Brent Patterson, Individually, and As Next Friend of
Daniel Patterson and Danae Patterson v. Brewer Leasing, Inc., Texas Stretch, Inc.
and Charles Hitchens, Individually, cause number 2006-76647, in the 334th Judicial
District Court of Harris County, Texas, the Hon. Sharon McCally presiding. 
2. In two cases, we granted production of both income tax returns and net worth
statements to show net worth. Delgado v. Kitzman, 793 S.W.2d 332, 333 (Tex.
App.--Houston [1st Dist.] 1990, no writ); Miller v. O'Neill, 775 S.W.2d 56, 59 (Tex.
App.--Houston [1st Dist.] 1989, no writ). However, these decisions predated the
Texas Supreme Court's ruling in Ramirez, and we therefore did not assess whether
production of net worth information found in financial statements would obviate the
need to discover tax returns. See Sears, Roebuck & Co. v. Ramirez, 824 S.W. 2d 558,
559 (Tex. 1992) (tax return not discoverable because duplicative of other financial
records provided). 
3. We are mindful that our opinion is based solely on the record before us and we
express no opinion regarding whether, after additional discovery, the tax returns could
be shown to be material. See Kern v. Gleason, 840 S.W.2d 730, 73537 (Tex.
App.--Amarillo 1992, no writ) (noting that if alternate source of information proves
to be incomplete, renewed request for income tax returns could be made).