# Supreme Court of Texas

═══════════
No. 20-0662
═══════════

In re Texan Millwork,

*Relator*

═══════════════════════════════
On Petition for Writ of Mandamus
═══════════════════════════════

**PER CURIAM**

A subpoena is generally required to compel a witness's appearance at an oral deposition. TEX. R. CIV. P. 199.3. But when "the witness is a party or is retained by, employed by, or otherwise subject to the control of a party," service of a notice of oral deposition on the party's attorney "has the same effect as a subpoena served on the witness." *Id.* Here, the parties hotly dispute whether the witness was "employed by[] or subject to the [relator's] control" when a fatal industrial accident occurred. The record, however, bears no evidence of employment or control contemporaneous with service of the deposition notice or thereafter and includes uncontradicted evidence to the contrary. The trial court therefore abused its discretion in compelling the relator to produce the witness for an oral deposition. Because the relator lacks an adequate remedy by appeal, we conditionally grant the relator's mandamus petition seeking relief from the trial court's order.

## I

In December 2016, Jay Adashera, an employee of a wholesale granite purveyor, died when two 400-pound granite slabs fell off a contractor's truck at his workplace. Adashera's survivors sued the granite company and the truck owner, Lazaro Cabrera, for negligence, gross negligence, and wrongful death. After obtaining a default judgment against Cabrera, the survivors added claims against Texan Millwork, Inc., a cabinet-maker that had purchased the granite slabs and had hired Cabrera to fabricate the slabs into countertops for a residential construction project.

In November 2018, shortly after being served with the lawsuit, Texan Millwork requested and secured Cabrera's sworn statement. One month later, Texan Millwork disclosed the statement in discovery and then attached it as evidence to support traditional and no-evidence motions for summary judgment. Those motions asserted that, as a matter of law, Cabrera was an independent contractor who was not subject to Texan Millwork's actual or contractual control at the time of the accident.

To secure Cabrera's testimony, the survivors attempted to serve him with a notice of oral deposition at the address he had provided in his sworn statement. Eight attempts at service between March 29, 2019, and April 8, 2019, were unsuccessful, as were repeated phone calls to the telephone number Cabrera had provided in his statement.

On March 10, 2020, nearly a year after attempting to secure Cabrera's deposition, the survivors' attorney sent Texan Millwork's attorney a letter requesting to "depose [Texan Millwork's] employee," referring to Cabrera. The letter further stated: "If this individual is no

longer within your control, please provide us with the last known contact information (including phone number and address)." Texan Millwork's attorney responded: "Mr. Cabrera is not and never has been an employee of Texan Millwork. His last known address and phone number have been provided in our discovery responses/supplemental responses."

Immediately thereafter, the survivors filed a motion to compel Texan Millwork to produce "its agent and/or employee" pursuant to Texas Rule of Civil Procedure 199.3. The survivors asserted that Texan Millwork "maintains control over Mr. Cabrera" such that service of a notice of deposition on the company's attorney is sufficient to compel Cabrera's appearance under the discovery rules without serving him with a subpoena. To show control, the survivors cited evidence to the effect that Cabrera was "working for" Texan Millwork on the day of the accident; Cabrera was the only granite fabricator doing business with Texan Millwork at the time of the accident; a Texan Millwork employee had paid for the granite slabs and was present at the accident site on the day Adashera died; Cabrera had worked on several other projects for the company after the accident; and Cabrera had, on request, given a sworn statement to Texan Millwork's counsel early in the litigation while subsequently evading the survivors' multiple attempts to communicate with him.

In response, Texan Millwork asserted that it (1) had never retained, employed, or controlled Cabrera, who was, at all times, an independent contractor; (2) had not communicated with Cabrera for any reason in nearly a year; and (3) could not be compelled to produce Cabrera for a deposition because it lacked a past or present right of control over him. In addition to adducing controverting evidence

3

concerning Cabrera's business relationship with the cabinet-maker at the time of the December 2016 accident,[1] Texan Millwork provided an affidavit from its president, Joe Villareal, regarding Cabrera's present relationship with the company. Villareal averred: "I have not retained Lazaro Cabrera to perform any work for Texan Millwork since approximately May/June of 2019. I have not communicated with Lazaro Cabrera or had any contact with him since May/June 2019. I do not know where Lazaro Cabrera currently resides." Also attached was an affidavit from Texan Millwork's counsel, in which he testified: "I have not communicated with Lazaro Cabrera or had any contact with Lazaro Cabrera since I took his sworn statement on November 19, 2018." The record bears no evidence controverting this testimony.

Without explanation, the trial court granted the survivors' motion to compel and ordered Texan Millwork to produce Cabrera for a deposition no later than April 22, 2020.

The court of appeals denied Texan Millwork's petition for mandamus relief, concluding that (1) the trial court "impliedly found

---

[1] In his November 2018 sworn statement, which was attached to Texan Millwork's response, Cabrera testified that he never entered into any written contracts with Texan Millwork; he worked for himself; he was not Texan Millwork's employee; Texan Millwork paid him by the square foot, not by the hour; he determined how many hours to work per day; he did not turn in a time card; he was not paid any additional amount to transport the granite; Texan Millwork withheld no income taxes, social security, or anything else from his pay; Texan Millwork provided him no benefits such as health or life insurance, short- or long-term disability, 401k or other retirement, or paid vacation; Texan Millwork did not provide him with uniforms or other branded clothing; he fabricated the granite at a shop he rented from a third party; he used all his own tools and equipment; and no one from Texan Millwork ever instructed him how to do any part of his job.

Cabrera is either [Texan Millwork]'s employee or is otherwise subject to [its] control"; (2) the record "does not demonstrate there is no evidence to support the trial court's implied finding"; and (3) "[w]hile there is evidence to the contrary, it is well-settled that appellate courts do not deal with disputed areas of fact in original proceedings." ___ S.W.3d ___, 2020 WL 4689294, at *1 (Tex. App.—Houston [14th Dist.] Aug. 13, 2020). In holding that a fact issue exists with respect to Cabrera's employment status or Texan Millwork's right of control, the court relied on evidence of Cabrera's activities on the day of the accident and evidence of his alleged employment relationship with Texan Millwork at that time, which was more than three years before production was sought and compelled.

On petition for writ of mandamus to this Court, Texan Millwork argues the order compelling it to produce a co-defendant for an oral deposition is not authorized by the discovery rules because (1) Rule 199.3 permits service of a notice of deposition on a party's counsel to substitute for subpoenaing the witness only when that party *presently* employs, retains, or has a right to control the witness; (2) regardless of the nature of any past relationship—which remains disputed—the record establishes that Texan Millwork neither employed nor controlled Cabrera at the time his deposition was noticed or thereafter; (3) even if past employment or control could suffice, Texan Millwork never had the type of relationship with Cabrera that Rule 199.3 contemplates; and (4) Rule 199.3's substitute notice procedure does not allow courts to compel a party to produce a

codefendant for an oral deposition.[2]   Because mandamus relief is warranted based on the first two arguments, we do not reach the others.

**II**

A writ of mandamus will issue only if the trial court clearly abused its discretion and no adequate appellate remedy exists.  *In re Gonzales*, 619 S.W.3d 259, 261 (Tex. 2021).  A trial court abuses its discretion when it misinterprets or misapplies the law.  *Id.*  A trial court also abuses its discretion when a decision is contrary to the only permissible view of the evidence.  *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998).  Here, the trial court necessarily concluded either that (1) Rule 199.3 waives the subpoena requirement even when employment or control is lacking at the time the deposition notice is served and production is required; or that (2) Texan Millwork employed or controlled Cabrera at those times.  Either conclusion was a clear abuse of discretion.

Properly and logically construed, Rule 199.3 does not permit the trial court to compel a party to produce a witness when the party does not retain, employ, or control the witness at the time production is requested or required.  Rule 199.3 provides:

> A party may compel the witness to attend the oral deposition by serving the witness with a subpoena under Rule 176.  If the witness is a party or *is retained by, employed by, or otherwise subject to the control of a party*,

[2] After Texan Millwork sought mandamus relief in this Court, a new judge assumed the trial court bench.  In accordance with Texas Rule of Appellate Procedure 7.2(b), we abated this original proceeding to allow the successor judge an opportunity to reconsider the original ruling.  *See* TEX. R. APP. P. 7.2(b).  When the successor judge declined to do so, we lifted the abatement and reinstated the case to the active docket.

however, service of the notice of oral deposition upon the party's attorney has the same effect as a subpoena served on the witness.

TEX. R. CIV. P. 199.3 (emphasis added).

In construing procedural rules, we "apply[] the same rules of construction that govern the interpretation of statutes." *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007). "When a rule of procedure is clear and unambiguous, we construe the rule's language according to its plain or literal meaning," *id.*, applying the rules of grammar and considering the context, *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014). "[U]se of a verb tense is significant[.]" *United States v. Wilson*, 503 U.S. 329, 333 (1992). Specifically, "[u]se of the present tense strongly suggests [the object of reference] lies in the present or the future, not in the past." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987); *see Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) ("The use of the present tense . . . rather than the past tense . . . further supports our conclusion[.]"); *Volosen v. State*, No. 2-04-390-CR, 2007 WL 3317941, at *3 (Tex. App.—Fort Worth Nov. 9, 2007, pet. ref'd) (not designated for publication) ("Based on the [present] verb tense of the words used[,] . . . we cannot rewrite the statutory defense to [use the past tense]."). Here, the grammatical difference in the past and present tenses is clear and consequential, and construing Rule 199.3 as requiring contemporaneous employment, retention, or control—consistent with the rule's use of the present tense—is not only reasonable but also the only construction that comports with the rule's plain language.

To dispense with the subpoena requirement for nonparty witnesses, Rule 199.3 requires the existence of a specified relationship—retention or employment—and, failing either of those, the witness must be subject to the party's "control." Affording these terms their plain and commonly understood meaning, a deposition notice served on a party cannot, as Rule 199.3 contemplates, "ha[ve] the same effect as a subpoena served on the witness" unless the party has the present power or authority to direct the witness to appear as noticed.

Commonly understood, a witness "employed by" a party is one "who works in the service of [the party] under an express or implied contract of hire, under which the [party] has the right to control the details of work performance." *See Employee*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 10 n.4 (Tex. 2015) (quoting *Black's Law Dictionary*'s definition of "employee" as the "common understanding of the term"). Similarly, to "retain" a witness means "to hold . . . under [the party's] control[.]" *Retain*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see In re Reaud*, 286 S.W.3d 574, 580 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam) ("Retained experts are also subject to being 'controlled' by the attorney for the party who, along with his client, has the power to terminate the relationship in the event the expert failed to comply with the attorney's instruction to appear for deposition."). Both of the specifically enumerated relationships contemplate the type of control that derives from an existing relationship, and as used in Rule 199.3, the more general category of witnesses subject to a party's "control" connotes the same.

"Control" over someone is "[t]he direct or indirect power to govern the management . . . of [the] person . . . ; the power or authority to manage, direct, or oversee[.]" *Control*, BLACK'S LAW DICTIONARY (11th ed. 2019). Rule 199.3's use of the modifier "otherwise" invokes the *ejusdem generis* canon of construction, which limits the scope of the catchall language to the same class or category as the specific items that precede its use. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). In a similar fashion, the *noscitur a sociis* canon of construction provides that words must be construed in context to comport with the surrounding text. *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008). Applying these interpretive doctrines to Rule 199.3, a witness would not be "otherwise subject to the control of" a party absent an existing relationship that imbues a party with a right of control commensurate with the type of control that could be exercised when a witness is "employed by" or "retained by" the party. Presently retained or employed witnesses, for example, can presumably be coerced to appear by the party's threat of adverse employment action. *See Reaud*, 286 S.W.3d at 579-80. But just as the ability to exert coercive force—to control—does not predate a witness's retention, employment, or other similar relationship, so too it does not survive their cessation.

To construe Rule 199.3 otherwise would lead to the untenable result that a party could be compelled—on pain of sanctions—to produce a witness over which it possesses no power or authority merely because it may have held, at some point in the past, a right of control. *See* TEX. R. CIV. P. 215.1(b)(2)(A), (d) (authorizing sanctions for noncompliance with discovery order or request). This is not a reasonable construction of the rule. *Cf.* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is

9

presumed that . . . a just and reasonable result . . . feasible of execution is intended[.]").  In contrast, requiring present control, consistent with Rule 199.3's language, makes the rule's substitute process complementary to the coercive effect of a subpoena.

While courts have not expressly addressed the temporal limitation inherent in Rule 199.3's plain language, courts applying the rule have focused on evidence of the party's present ability to control the witness.  *See In re Saddles Blazin, LLC*, No. 09-20-00209-CV, 2021 WL 377247, at \*2 (Tex. App.—Beaumont Feb. 4, 2021, orig. proceeding) (per curiam); *In re Total Petrochems. & Refin. USA, Inc.*, 595 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding); *Reaud*, 286 S.W.3d at 579, 581-82.  Further, in construing Rule 199.3's similarly worded predecessor, we referred to the relevant time period as "when notice was served[.]"  *Wal-Mart Stores, Inc. v. Street*, 754 S.W.2d 153, 154 (Tex. 1988) (quoting former TEX. R. CIV. P. 201(3)).

In accordance with well-established interpretive principles, we conclude that Rule 199.3 does not authorize courts to compel a party to produce a witness when retention, employment, and control are lacking at the time production is sought.  In addition to comporting with Rule 199.3's plain meaning, context, and grammatical structure, this construction is logical while a more expansive reading would lead to an unreasonable and unworkable result.  To the extent the trial court concluded that prior employment or control would suffice to compel production under Rule 199.3's substitute notice process, the court clearly abused its discretion.  And to the extent the trial court found a fact issue regarding employment or control contemporaneous with

10

required production, that conclusion is contrary to the only permissible view of the evidence.

While deference must be afforded to the trial court's determination of disputed fact issues, *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978), the record is devoid of evidence that Texan Millwork employed or controlled Cabrera when the deposition notice was served or any time thereafter. Rather, the uncontroverted evidence establishes that Texan Millwork had not engaged Cabrera for fabrication work or otherwise, or even communicated with him, for at least eight months before the survivors served the deposition notice.[3]

With respect to time periods after the accident, the survivors cite to Cabrera's cooperation with Texan Millwork's counsel by providing a sworn statement after the accident. But even if Cabrera's cooperation evinced a sufficient degree of control over him to raise a fact issue, which is dubious, that event occurred in November 2018, more than a year before the relevant time period.

Because there is no evidence of retention, employment, or control at the time discovery was sought—and uncontroverted evidence to the contrary—the trial court erroneously compelled Texan Millwork to produce codefendant Cabrera for an oral deposition,[4] and mandamus

---

[3] We express no opinion as to whether the evidence the court of appeals relied on, if contemporaneous with the required production, could raise a fact issue regarding employment status or ability to control. *See* ___ S.W.3d ___, 2020 WL 4689294, at *1. Nor does this opinion address the parties' dispute about Cabrera's employment status on the day of the accident.

[4] Bad-faith conduct to avoid discovery, including Rule 199.3's obligation to produce a witness subject to the party's control, would be sanctionable, but there is neither evidence nor allegation of bad faith here. *See* TEX. R. CIV.

relief is warranted because an adequate appellate remedy is lacking. *See Gonzales*, 619 S.W.3d at 261.

"Appeal from a trial court's discovery order is not adequate if: (1) the appellate court would not be able to cure the trial court's error on appeal [or] (2) the party's ability to present a viable claim or defense is vitiated or severely compromised." *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998). Texan Millwork has a right to proper application of the discovery rules governing depositions, and if discovery takes place under an improper order, the error cannot be rectified on appeal. *See, e.g.*, *In re Berry*, 578 S.W.3d 173, 182 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding) ("Mandamus is proper here because the [deposition] order is not permitted by the Texas Rules of Civil Procedure and because any discovery undertaken pursuant to the order cannot be undone."). As we have consistently held, parties lack an adequate appellate remedy from orders compelling discovery beyond what the rules allow.[5] Such is the case here. "[O]nce the deposition has

---

P. 215.1 (authorizing sanctions for discovery abuse); *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717-18 (Tex. 2020) (holding that trial courts have inherent power to sanction bad-faith conduct). Nor does the record bear evidence or any allegation that a change in employment status or control arose after or as a result of service of the deposition notice on Texan Millwork's counsel.

[5] *See In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) ("A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy."); *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) ("An order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy."); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) ("The trial court's ruling requiring production beyond that permitted by the rules of procedure was a clear abuse of discretion. Defendants have no adequate

been taken, it cannot be untaken." *In re Liberty Cnty. Mut. Ins. Co.*, 557 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding).

## III

Accordingly, without hearing oral argument, we conditionally grant Texan Millwork's petition for writ of mandamus and direct the trial court to vacate the April 1, 2020 order compelling Texan Millwork to produce Cabrera for an oral deposition. *See* TEX. R. APP. P. 52.8(c). We are confident the trial court will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** October 1, 2021

---

remedy by appeal."); *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) ("Sears has no adequate remedy by appeal because the court of appeals cannot cure the trial court's error."); *Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732, 733 (Tex. 1983) ("[M]andamus is available to correct a clear abuse of discretion in a discovery matter."); *West v. Solito*, 563 S.W.2d 240, 244 (Tex. 1978) ("It is recognized that a writ of mandamus may issue in a proper case to correct a clear abuse of discretion, particularly where the remedy by way of appeal is inadequate."); *see also In re Saddles Blazin, LLC*, No. 09-20-00209-CV, 2021 WL 377247, at *2 (Tex. App.—Beaumont Feb. 4, 2021, orig. proceeding) (per curiam) ("Saddles lacks an adequate remedy by appeal because 'once the deposition has been taken, it cannot be untaken.'" (quoting *In re Liberty Cnty. Mut. Ins. Co.*, 557 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding))); *In re Reaud*, 286 S.W.3d 574, 583 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam) (granting mandamus relief because "the record . . . contain[ed] no evidence proving that Huntsman possessed the type of control implicated by the Rules").